RUPERTO CONDE AND ESTEBAN CONDE v. THE STATE.

*No. 753.   Decided November 25.*

1. **Murder—Evidence—Coconspirators—Fruits of Crime.**—On a trial for murder, where it appeared that defendants and their father acted together in the killing, and the State introduced testimony to the effect that soon thereafter one of the defendants was seen wearing the sash of deceased, and that the same defendant and his father had also sold the deceased's gun; and it was objected that the evidence was inadmissible against the other defendant on trial, who was not present on either occasion. *Held*, the evidence was admissible as inculpatory physical facts and fruits of the crime.

2. **Accomplice Testimony—Charge.**—On a trial for murder, where a State's witness testified that he had assisted in burying the body of deceased, and his statements in relation to this circumstance are of such a remarkable character as to lead at least to the inference that he was connected with the transaction more intimately than was detailed by him, *Held*, that, in connection with his testimony, it was error for the

court to refuse instructions in regard to accomplice testimony and its requisite corroboration.

**3. Opinion Evidence.**—Where a witness testified that he saw the dead body; that the head and face were covered with a white cloth, which was bloody and had dirt or sand on it; that the cloth was not removed, nor did he see the face of deceased; that in so far as the rest of the body was concerned he saw no knife or gunshot wounds upon it; and in answer to a question, in effect, as to how the body was wounded, judging from the appearance, stated that he "thought the wound was the result of a gunshot." *Held*, the evidence was inadmissible, because the mere opinion of the witness as to two important facts: (1) That there was a wound. (2) That it was a gunshot wound.

**4. Allegation and Proof.**—Where an indictment for murder alleged a killing by a gunshot or knife wound, there must be proof that the killing was by one or the other or both modes, and unless some such proof is made the conviction can not stand.

APPEAL from the District Court of Cameron. Tried below before Hon. JOHN C. RUSSELL.

This appeal is from a conviction for murder of the second degree, the punishment assessed at ten years' confinement in the penitentiary of each of the appellants.

The opinion of the court sufficiently states the case.

No briefs found with the record.

DAVIDSON, JUDGE.—Gregoria Conde, together with his two sons, Ruperto and Esteban, were jointly indicted for the murder of Francisco Andes. Ruperto and Esteban were placed on trial and convicted of murder in the second degree. The prosecution was permitted to prove that, about one week after the alleged homicide, Esteban Conde was seen at a dancing party wearing the "banda," or "Mexican sash," of deceased, and that within a short time subsequent to said homicide Esteban and Gregoria Conde, being together, sold to Garza the gun of deceased. This latter occurrence transpired at the residence of Gregoria Conde, and in both instances Ruperto Conde was not present. It is urged here, and was so urged on the trial, that these facts were inadmissible as against Ruperto Conde. The evidence adduced on the trial sufficiently shows that these three parties, father and two sons, acted together in committing the murder. While the acts, conduct and declarations of one coconspirator, made after the consummation of the conspiracy, can not be used as evidence against another coconspirator, yet any fact or circumstance which would tend to prove the guilt of the codefendant, would also tend to prove the guilt of the defendant, and would be admissible against him. Pierson v. The State, 18 Texas Crim. App., 524; Clark v. The State, 28 Texas Crim. App., 189. The possession of the sash by Esteban Conde, as well as the possession of the gun by Gregoria and Esteban Conde, would be admissible to prove their guilt, and would also be admissible for the purpose of

proving the guilt of Ruperto Conde, and was therefore admissible against him. They were not acts, declarations or conduct of the co-conspirators transpiring subsequent to the crime, but were physical facts, independent and inculpatory in their nature, and were the fruits of the crime. The gun was seen in the possession of deceased the day of and prior to his disappearance, and the sash he had been wearing for two years prior to his death. Pace v. The State, 20 S. W. Rep., 762. The testimony was clearly admissible. Authorities above cited.

The defendant requested the court to instruct the jury in regard to the law pertaining to accomplice's testimony, and the necessary corroboration, as a condition precedent to conviction. The charge was refused. In this connection the evidence discloses that Ramon, the principal State's witness, accompanied the defendants to the body of deceased, which they reached after traveling several miles, some distance of the way on foot, through dense brush. Upon inquiring of the defendants, while en route to the body, their destination and where they were taking him, this witness states he was informed by them that they "were going to bury Don Pancho Andes, who is dead." Upon reaching the body, they found the upper portion of it, including the head, "was covered with a coarse white cloth, bloody, and having dirt or sand upon it." At the body were also found tools with which to dig a grave. The witness was told to dig the grave, which he did, and assisted in burying the body. Shortly after leaving the grave, in company with defendants, they met Gregoria Conde, the father of defendants, who inquired if they had "finished the job." Gregoria remarked to witness: "Be very careful about this. If anything of this becomes known, I or my sons will injure you," at the same time placing his hand upon his pistol. A few days later, the witness gave information of the affair, and went to Mexico. This witness had been arrested on two former occasions for murder in Mexico, and released. The story, as detailed by this witness, of his connection with this transaction, is somewhat remarkable. Why the three men who did the murder should have sought this witness for the purpose of assisting them in burying their victim, thus putting him in possession of the facts which would and did ultimately lead to the detection, arrest and the conviction of defendants, can hardly be taken as reasonable. That he assisted at the burial, we think, is certain; but it seems hardly possible that this was his first and only connection with the horrible murder. Just why he should have been brought to the body to assist defendants in secreting their victim under the circumstances disclosed, when it would have been much more convenient to have done so without him, is not at all apparent. The inference may be at least deducible from the facts, that he was connected with the transaction more intimately than detailed by him in his testimony. We are of opinion that, under the facts proved, the question of his being an accomplice

should have been submitted to the jury under appropriate instructions, and that the court erred in not giving the requested instructions.

By bill of exceptions it is shown that the witness Ramon testified as follows, to wit: "After I was informed by Esteban that Francisco Andes was dead, we were met by Ruperto Conde, and went into a dense thicket where the body was lying. The body was lying upon the ground. The upper part, including the head, was entirely covered with a coarse white cloth. The cloth was bloody, and also had dirt or sand upon it. I did not remove the cloth. Did not see the face. It was covered by the cloth. Did not see any gunshot or knife wounds upon the body." The prosecution then asked: "From the appearance, what do you judge the wounds to have been the result of? Of what nature do you judge them to have been?" To which the witness answered that he "thought the wound was the result of a gunshot, and that he thought so from the appearance." The objection to this evidence was that it was a matter of opinion, and not a fact, to which the witness was required to and did testify. The question involved two opinions: first, that there was a wound; second, that it was made by a gunshot. If the witness had been an expert, he could not have given an opinion, for want of facts upon which to predicate it. The witness saw no wounds on the body. Had he observed wounds he could have described them to the jury, and may have then given his opinion as to whether or not they resembled gunshot wounds. We know of no authority authorizing the opinion given by witness in this case. The witness states the facts, and the jury form their conclusions.

In view of another trial, we would call attention to the fact that the evidence fails to show the deceased came to his death either by a gunshot or knife wound, as alleged in the indictment. While proof of either would be sufficient, yet it must be shown that he came to his death by being shot, or by an incised wound inflicted by a knife or some other weapon with which such a wound could be inflicted. We would further suggest that another indictment be found, in which the further allegation be inserted that the deceased came to his death by some means, and by use of some weapon, to the grand jurors unknown, in order to meet all phases of the testimony adduced on the trial.

For the errors indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.