John McElroy v. The State.

No. 3785.    Decided Jan. 20, 1908.

**1.—Theft of Horse—County Line—Venue.**

Where upon trial for theft of a horse the evidence showed that the offense was committed within one hundred yards of the county line of the county of the prosecution, the venue was sufficiently proved under article 228, Code Criminal Procedure.

**2.—Same—Accomplice Testimony—Charge of Court.**

Where upon trial for theft of a horse it was a controverted question as to whether or not the main State's witness was an accomplice, and the court submitted the question as to whether said witness was an accomplice to the jury, and required corroboration before they could convict, it must be inferred that the jury decided that said witness was not an accomplice from the fact that there was no testimony corroborating him. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Lavaca. Tried below before the Hon. M. Kennon.

Appeal from a conviction of theft of a horse; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Paulus & Ragsdale,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of theft, and his punishment was assessed at two years confinement in the penitentiary.

The evidence in the case shows that the horse in question was stolen within one hundred and fifty yards of Lavaca County line. Article 228, of the Code of Criminal Procedure, provides that the offense of theft if

committed within four hundred yards of a county line may be prose-
cuted in either county. This was done in this case.

The evidence is sufficient to support the conviction, and the judgment
is affirmed.

*Affirmed.*

### ON REHEARING.

### June 26, 1908.

BROOKS, JUDGE.—This case was affirmed upon a previous sitting
of this court in a short opinion wherein we reviewed the only two in-
sistences made by appellant in his motion for a new trial. The first
contention was that the offense was not committed within four hundred
yards of the county line of Lavaca County. The evidence clearly shows
this is not correct. It was within one hundred yards. The evidence
shows that appellant and Pete Dunn, and a boy who was accompanying
appellant named Hoffernik, were in the town of Yoakum the night the
animal was stolen, and Dunn accompanied appellant to the wagon yard
where appellant's horses were. When they reached said place, appellant
asked Dunn to assist him in catching the horse in question, which he
did, appellant stating that it was his horse. After the horse was caught
Hoffernik, the Bohemian boy, got on same, and Dunn assisted appellant
to hitch up his horses, appellant being quite drunk. Then appellant
told Dunn he would give him $1.50 to drive the wagon for him out of
the corporate limits. This the witness did, the boy having preceded
them a short while on the pony that was stolen from the prosecuting
witness in this case. When they reached the edge of the corporation,
Dunn got out of the wagon, appellant giving him $1.50 for his services,
and the boy, Hoffernik, gave Dunn $1 and appellant gave Dunn the
remnant of a bottle containing a small quantity of whisky. The wit-
ness Dunn swore he did not know whose animal it was that he assisted
appellant in taking; that he thought it was appellant's animal, and as
far as this record shows there is no evidence showing that the witness
Dunn is an accomplice, except the facts above detailed showing the re-
ceipt of the money, the fact that the animal was taken at night, and the
further fact that Dunn lived in the same town where the animal ranged
around the common. The court submitted the question as to whether
Dunn was an accomplice to the jury at the insistence of appellant, tell-
ing the jury, in substance, that if the witness Dunn is an accomplice,
the jury must believe his testimony is corroborated by other evidence
tending to connect defendant with the commission of the crime before
they can convict. There is no complaint of the charge, but the sole
insistence in the motion for a new trial is that the evidence does not
support the verdict. The witness Dunn testified not only that he as-
sisted in taking the particular animal belonging to prosecuting witness,
as stated above, but that he identified the animal in the town of Yoakum
on the day of the trial as the animal that he had assisted appellant in
taking. Now, does the evidence support the verdict? The court had

told the jury, as stated, not to find appellant guilty upon the testimony of Dunn if he was an accomplice unless his testimony was corroborated. The jury found appellant guilty, and the only just and legal inference from said fact is that the jury decided in the first instance that, Dunn not being an accomplice, there was sufficient testimony to support the verdict, and this conclusion is irresistibly forced upon us by virtue of the fact that there is no testimony corroborating said Dunn. If it was an undisputed fact, or rather if the evidence was undisputed that Dunn was an accomplice, and the court had so charged, then we would have appellant's question before us, but here, according to the evidence, we have a controverted question as to whether or not the witness Dunn is an accomplice. We have the jury finding appellant guilty on his testimony. If we believe the testimony for the State on the question of accomplice, Dunn is not an accomplice. The testimony for the defendant suggests that he was, and under a long line of authorities of this court we cannot review a controverted question of fact. This being true, we hold that the evidence is sufficient to support the verdict, and the motion for rehearing is therefore overruled.

*Overruled.*

DAVIDSON, Presiding Judge (dissenting).—I am fully pursuaded the motion for rehearing should be granted, the affirmance set aside, and the judgment reversed. There is no fact in the record which shows or tends to show that appellant was ever in possession of the alleged stolen horse except the evidence of the witness Dunn, who, in substance, states that about midnight or a little thereafter, in the town of Yoakum, he assisted appellant and another party, Hoffernik, whom he denominates a "boy," in driving a horse from the street into a lot or wagon yard, where the horse was caught and the boy rode it away. This witness further states that appellant claimed ownership of the animal at the time, and that he, the witness, thought the horse belonged to appellant. Dunn stated that they had been drinking in the different saloons about the town to within a few moments of the time they drove the horse from the street into the lot, and that appellant was drunk. That as Hoffernik rode away Dunn swears he agreed to pilot appellant to the edge of the town where they met the boy, who had ridden the horse and for which appellant agreed to pay him, the witness, $1.50. That when they reached the designated point, the boy was in waiting, still in possession of the horse that they had taken as well as of another horse. That at that point appellant paid him $1.50 and the boy gave him $1 and a bottle of alcohol or a part of a bottle of alcohol. He separated from appellant and Hoffernik at this point and returned to town. Excluding Dunn's evidence from this record, there is not a word or fact to show that appellant was either in Yoakum or had any connection whatever with the horse. Later a horse was found in possession of a Mexican named Morena. The horse's mane had been cut away as well as the hair from the tail. The horse was in a disfigured condition when found in possession of the Mexican. The

Mexican accounted for his possession of the horse by giving the name of the party from whom he says he purchased it. This party, however, was in no way connected with appellant, nor was there any attempt to connect him with appellant. Nor does the evidence show or tend to show that appellant ever saw the party or the Mexican. Dunn was shown the horse said to have been taken from the Mexican, after he was taken, and testified that he looked like the horse that he assisted appellant in taking in Yoakum. Dunn further stated positively that he did not know who: the horse belonged to and had never seen the horse before. In the opinion of the writer this evidence is not sufficient, first: because the testimony does not sufficiently identify the horse Dunn says was taken as the property of the alleged owner Burkett, even if Dunn should not be regarded as an accomplice. Second, because Dunn is an accomplice, and is in no way corroborated by a single fact or circumstance contained in the record. The State did not even undertake to prove by anybody except Dunn that appellant was in Yoakum or took the horse, or was in any way connected with the transaction. Therefore, from this standpoint Dunn must be treated as an accomplice, and the court should have so charged the jury, and whether it was error or not for the court to fail to so charge, yet, under our decisions, this witness is to be treated and held to be an accomplice. The court submitted as an issue of fact in his charge to the jury, to be found by them, whether Dunn was or was not an accomplice. As before stated, the court should have charged the jury that Dunn should be regarded as an accomplice by them, and that they must find his testimony, first, to be true, and second, sufficiently corroborated, to connect defendant with the crime committed. It is a rule in Texas well settled and thoroughly adjudicated by our decisions, that if a witness implicates himself in the transaction, he is to be regarded as an accomplice. See Irvin v. State, 1 Texas Crim. App., 301; Kelly v. State, 1 Texas Crim. App., 628; Hasselmeyer v. State, 1 Texas Crim. App., 690; Florez v. State, 11 Texas Crim. App., 102; Phillips v. State, 17 Texas Crim. App., 169; May v. State, 22 Texas Crim. App., 595; Blakely v. State, 24 Texas Crim. App., 616; Conde v. State, 33 Texas Crim. Rep., 10; Puryear v. State, 28 Texas Crim. App., 73. In the Puryear case, supra, the question was before the court, and seems to have been the turning point in the disposition of the case. The accused in that case was tried for killing an infant. When the mother gave birth to the child, the State's theory was that appellant killed it either by drowning or burning. The mother testified, among other things, that she begged the accused not to destroy the life of the child, and her testimony was as cogent, if not more so, in eliminating herself as an accomplice, than is the testimony of the witness Dunn in this case. The court, however, held her to be an accomplice, and required corroboration. I deem it unnecessary to go into a discussion of the cases cited, but simply state they are in line with the Puryear case, supra, and sustain it. If these cases are correct, and they have been followed without deviation and never questioned, the witness Dunn is an accomplice. It will

not be questioned for one moment that if Dunn was upon trial, under the testimony given by him, any honest jury would promptly have convicted him for theft of the horse, and this court would have as promptly affirmed it on the facts.

For the reasons indicated, I do not feel justified in agreeing to an affirmance of this judgment, for the testimony clearly shows Dunn to be an accomplice, even if it be conceded that the horse about which he testified was the horse alleged to have been stolen, and was the property of Burkett as alleged, and this is more than doubtful. I therefore dissent from this affirmance.