## Otis Mayes v. The State.

### No. 5794.   Decided April 21, 1920.

### Rehearing Denied June 23, 1920.

1.—Assault to Murder—Aggravated Assault—Copy of Indictment—Rule Stated.

Where appellant contended that he was entitled to have a copy of the indictment served upon him and two days thereafter in which to prepare for his defense, but the record on appeal showed that he was under bond at the time of the return of the indictment, and had not been in jail since executing his first bond, and upon demand was served with a copy of indictment, there was no reversible error.   See Revill v. State, 87 Texas Crim. Rep., 1. recently decided.

2.—Same—Evidence—Wounds Inflicted Upon Party Injured—Conclusion of Witness

Where, upon trial of assault to murder and a conviction of aggravated assault, the State was permitted to introduce testimony by the party injured showing the wounds inflicted and their character, etc., there was no reversible error, and this was not a conclusion of the witness.   Distinguishing Conde v State, 33 Texas Crim Rep. 10

3.—Same—Evidence—Other Transactions—Prior Difficulty

Upon trial of assault to murder and a conviction for an aggravated assault. there was no error in admitting testimony in regard to a previous trouble between the assaulted party and defendant, occurring something like twenty-four hours before the difficulty, this being the inducing cause why defendant made the assault the night following

4.—Same—Evidence—Convict—Pardon—Moral Turpitude

Where, upon trial of assault to murder and a conviction of aggravated assault, upon cross examination of defendant's witness, the State was permitted to show that the witness had been convicted of a felony, and the witness was then permitted to testify that he had been pardoned and appellant contended that this is too remote, it being more than seven years since the conviction of witness, there was no error, as his term of service in the penitentiary should not be regarded in the time occurring between the conviction and the time he testified.

5.—Same—Evidence—Motive.

Where, on trial of assault to murder and a conviction of aggravated assault, there was no error in admitting testimony that on account of the previous difficulty the defendant was discharged from the railway service and had conceived malice toward the prosecuting witness.

6.—Same—Bill of Exceptions—Practice on Appeal.

Where some testimony is admissible and other is not, this court is not called upon to take a lengthy bill of exceptions and cull from it such matters as might not be admissible, when much of the testimony is admissible, and such bill of exceptions will not be reviewed.

7.—Same—Sufficiency of the Evidence.

Where upon trial of assault to murder and a conviction for aggravated
assault, the evidence sustains the conviction under a proper charge of the
court, there is no reversible error.

Appeal from the District Court of Grayson.   Tried below before
the Honorable F. E. Wilcox.

Appeal from a conviction of aggravated assault, penalty of fine
of five hundred dollars and one hundred and twenty days confine-
ment in the county jail.

The opinion states the case.

*James D. Buster* and *C. T. Freeman*, for appellant.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—
Cited cases in opinion.

DAVIDSON, PRESIDING JUDGE.—This conviction was for aggra-
vated assault.  When the case was called for trial, before announcing
ready, defendant filed a motion stating that he had not been served
with a copy of the indictment, and asked that he be so served, and
requested that he be granted two days after such service before
being required to plead to the indictment.  The indictment charged
him with assault to murder.  The bill further recites that the mo-
tion was presented to the court on the 9th of December, 1919, and
that he was served with a copy of said indictment at five minutes
after 11:00 o'clock the same morning.  Appellant was arrested un-
der warrant issued from the justice court on the 16th day of July,
1919, and was confined in jail until the 11th of August, 1919, at
which date he was released upon bond.  The indictment was filed
on the 12th day of September, 1919.  Upon being notified of that
fact he made his appearance bond shortly afterward without further
being actually imprisoned.  Since making these bonds he has been
at liberty, and was at the time that he presented his motion.

Appellant contends that he was entitled under this statement to
have a copy of the indictment served upon him and two days there-
after in which to prepare for his defense.  In support of this he
cites us to Martin v. State, 80 Texas Crim. Rep., 108.  We are of
opinion that this case does not support his contention.  Martin was
indicted on the 23rd of May, 1916, was arrested the same day, and
gave bond.  A copy of the indictment was not served upon him.
When the case was called for trial six days later appellant filed a
motion stating that he had not been served with a copy of the
indictment, and requested that the officers be required to deliver
him a certified copy, and that he then be granted two days in which

87 Tex.—33

to plead to the indictment. Had appellant been in jail at the time of the return of the indictment his motion would have been well taken, or had he been at large and not under bond at the time of the return of the indictment, his motion would have been well taken; but in this case appellant was under bond at the time of the return of the indictment and had been under bond for about a month. It seems from the bill of exceptions he voluntarily entered into bond without being actually in custody under the indictment. Under the statute there are two phases of this question of service of the indictment. One is where it was requisite when insisted upon by the accused before he can be placed upon trial, but in such instance he must either be in custody at the time of the return of the indictment, or if at large at the time of the return of the indictment and not under bond then the service is required by the statute to be served upon him, and upon this he can insist unless he in some manner waives such service. Venn v. State, recently decided. The other phase to the statute is that where the party is under bond at the time of the return of the indictment he may demand a copy, and it would be error to refuse it, but in such case it is not obligatory upon the clerk to issue or the sheriff to serve such copy unless a request has been made for such copy. The statute seems to draw a distinction between where the party is under bond at the time of the return of the indictment and where such is not the case. This statute is in harmony with the Bill of Rights, which provides that the accused is entitled to have a copy of the pleadings bringing an accusation against him. In this particular case we find no error in the ruling of the court. Appellant was under bond at the time of the return of the indictment, and had not been in jail since executing his first bond. He had a right to demand a copy at any time, and here upon his demand he was at once served with a copy. This was in accordance with the law as we understand it. See Revill v. State, 87 Texas Crim. Rep., 1, decided at the present term of the court.

A bill of exceptions was reserved with reference to some matters brought out from the assaulted party Stepp while testifying for the State. This was over the objection of the defendant. The bill of exceptions is quite lengthy, the substance of which is that Stepp was permitted to tesify to the wounds inflicted upon his head and the character of the wounds. Two of the wounds, one behind the right ear and one on top of the head, were inflicted, according to Stepp's testimony, by the defendant with a blunt instrument. The second wound knocked him senseless. He described these wounds, and also thought there was a third wound that was inflicted upon him without his knowledge, that is, while he was unconscious. The objection seems to be based upon the general proposition that these were but conclusions and opinions of the witness, and in support of this we are cited to Conde v. State, 33 Texas Crim. Rep., 10. We

do not understand that case to be in point or support of the proposition. The witness in the Conde case testified that he saw the body of deceased and that it was bloody and had a cloth of some character over the face where the wounds were supposed to have been inflicted. Under those circumstances that witness could not state that the wounds were inflicted by a gun shot. It was but a conclusion, for he did not see the wounds. Had he seen the wounds the proposition would have been different. It does not take an expert to describe a wound. The testimony elicited, as we understand this bill of exceptions, from Stepp was that he was struck these blows and they inflicted wounds upon his head. Any witness could have testified who had seen the wounds to the fact that they were wounds and could have described them. There are other cases cited besides the Conde case, but they are to the same effect.

Another bill of exceptions was reserved to testimony in regard to a previous trouble between the assaulted party Stepp and defendant occurring something like twenty-four hours or more before this difficulty. This occurred at a station called Gunter. The occurrence and some of the details of what occurred between defendant and Stepp were given. This is not an extraneous matter or an extraneous offense as here applicable. This testimony was introduced to show the relation between the parties and the feeling of appellant toward Stepp. Evidence that shows motive or malice may not be regarded as extraneous in cases of this sort. This was the inducing cause urged why appellant made the assault the following night upon Stepp. We are of opinion this testimony was admissible to show malice and motive.

Another bill of exceptions recites that while the witness Barr was on cross-examination by the State he was permitted to testify that he had been charged with and convicted of a felony in McLennan County, and that that felony was assault with intent to murder. Thereupon defendant took the witness and upon re-direct proved by him that this was in the year 1907, and that he was convicted of assault to murder and allotted ten years in the penitentiary. He was then asked by defendant if he had been pardoned. Upon the State's objection the answer was not permitted, the objection being that if he had been pardoned that the pardon would be the best evidence. The appellant was then permitted to further examine the witness and prove by him he did not remember how long he had been out of the penitentiary, but said about four years. The witness, however, was permitted to and did testify. Appellant's contention is that this was too remote, that it had been more than seven years since witness' conviction. There is no evidence in regard to his course of conduct after he had been released from the penitentiary presumably under the pardon. We are of opinion there was no error in the ruling of the court in regard to this matter. His term of service in the penitentiary should not be regarded in the time

occurring between the conviction and the time of his testifying. It may be presumed that the State began this cross-examination of the witness to ascertain whether or not he had been pardoned with a view of disqualifying him as a witness had he been in the penitentiary. The court decided this matter against the State and the witness testified. In order to disqualify or render incompetent the witness it was necessary to produce the pardon. This not being done, he was permitted to testify, and here the matter ended.

Another bill of exceptions recites that the State was permitted to prove by appellant that on account of the difficulty at Gunter with Stepp he was discharged from the railway service, and that this discharge occurred in connection with that trouble. While the act of the discharge by the railroad would not be perhaps admissible as acts of a third party, it was introducible in this case to show that on account of this discharge appellant had conceived malice towards Stepp and that the difficulty with him was the occasion of such discharge. Whether it was the act of the railroad or not, defendant and Stepp were so mingled up with it and the discharge so connected with the difficulty, that if appellant conceived malice towards Stepp it may have been a cause for his attack upon him. The jury could so regard it. This matter was so connected with it that it was admissible not as an act of the railroad people but as a basis why he felt ill-will toward Stepp as being the cause of the discharge.

There is another bill of exceptions but it is so long and complicated that we are unable to understand exactly what part of the testimony set out in it was objected to and what was not. Much of the testimony was admissible, if not all of it. This court would not be called upon to take a lengthy bill of exceptions and cull from it such matters as might not be introducible when much of the testimony so narrated is admissible. The bill is so indefinite that we are unable to understand fully what was the purpose of the bill and to which part of the testimony objection was really urged; therefore, it is not further discussed.

Finding no material error in the record, if error at all, we are of opinion the judgment should be affirmed, and it is accordingly so ordered.

*Affirmed.*

ON REHEARING.

June 23, 1920.

DAVIDSON, PRESIDING JUDGE.—On a former day of the term the judgment herein was affirmed. The motion for rehearing brings in review only the sufficiency of the evidence to support the conviction. The punishment was $500 and one hundred and twenty days in jail. On account of the punishment and the insistence of appellant that

the evidence is not sufficient, we have given this case a careful revision from the viewpoint now presented by appellant.

The question presented with reference to want of sufficient evidence is the identity of the attacking party. The assault occurred at night somewhere between 12:15 and 12:45. Appellant introduced evidence of an *alibi*. This was sufficient had the jury believed it to have authorized an acquittal. It is not the purpose of this opinion to review the testimony bearing upon *alibi*. The conviction depends upon the sufficiency of the testimony to identify appellant as the attacking party. If this is sufficient this court would not feel justified in reversing. Where there are two fact theories, one which justified the verdict, and the other upon which the jury could have acquitted, it is the exclusive duty of the jury to decide. In view of that rule and under the contention of appellant some of the pertinent testimony will be collated.

There had been trouble between appellant and the assaulted party at a little station called Gunter on the train enroute from Fort Worth to Sherman. Both men were railroad employees. Appellant, was not an employee on that particular train, but the assaulted party Stepp was. Quoting from Stepp's testimony, after narrating the trouble, he says:

"We came on to Sherman and I do not know whether the defendant came on that train, I did not see him any more. We got to Sherman about 7:30 A. M., on the morning of the 16th of July and I did not see the defendant during that day. It was along about 12:30 on the morning of the 17th when I next saw him as near as I remember and that was just before he struck me in the back of the head. That was at the round house in Sherman, Grayson County, Texas. I was oiling the engine around, preparing the engine for the trip. I had oiled the right side and came around on the left side of the engine, that is the fireman side of the engine to oil that side and I was oiling the eccentric there and I heard some little noise behind me. I didn't know what it was but any way I looked back over my shoulder like and kind of turned my shoulder a little bit and he struck me over the right ear. He didn't get a very good lick from that but enough to kind of stun me, to knock me out of balance. And the next lick I got was on top of the head with some kind of blunt instrument, I couldn't see what it was exactly, looked more like brake club or coupling pin—that is the last thing I remember of that night. In oiling the engine we have an oil can in the right hand, if the man is right-handed, and a big torch in the left hand for light. I am right-handed and at that time I had the oil can in my right hand and the torch in my left hand. The torch is made of tin and so big around at the bottom and kind of funnel shaped. It is about twelve inches around at the bottom and about four inches at the top with a spout for a wick that contains oil, coal oil to make a light. The torch has a handle to hold to and makes a light about the size of a man's head, makes a very good

light if you have got oil in it. I had a good light, a very good torch
at that time, a man could see how to read orders by that torch any
time at night. At the time I turned around and saw the defendant
on my left I had the torch and it gave me light enough to see the
defendant, and there was also an arc light there too that also gives
light. The defendant was dressed the best I remember, he had on a
black hat and had on a kind of blue overalls, it looked like, if I am not
mistaken, his working clothes. The first lick that he struck me was
over the right ear, there is a scar there and there is one on top of my
head too, you can feel it, besides that one in my forehead. The first
blow back of my head, was more of a glancing lick than a direct
blow—I kind of ducked my head. The first blow knocked me down
partly and staggered me. It was a very little while after that first
blow until I was staggering that I was struck another blow on top of
the head and there is a very long scar up there, about six inches. . .
. I couldn't say that I was angry with the man after the trouble was
over at Gunter but I did not see the man any more until the morning
of the 17th about 12:30 o'clock as near as I remember. I have no
means at all of guessing the time of day as twelve o'clock only we are
called for 12:45 and 118 is due here at 12:15 and I was just talking to
the engineer as he came in on the 118. I could not say whether 118
came in on time that night or whether it was five or ten minutes late.
. . . I know that this is the man who struck me, I could not be
mistaken about it." This witness stated he had not told anybody until
the day before he was testifying as to who it was that struck him.
Up to that time he denied knowing who it was; that he first told Mr.
Gafford that he knew appellant was the man who struck him. Fur-
ther testifying he states: "At that time I heard the noise and looked
around the best I remember the party was about three feet from
me, three or four feet, I couldn't say the exact distance. I was
facing north and he was south of me, as nearly due south as I could
state. I was oiling the engine and was standing you might say
erect. I was oiling the eccentric. I was not oiling any one thing
when I heard this noise but I was generally oiling the engine. I
was actually emptying oil from my oil can on some part of the engine
when I heard the noise. My lamp was in my left hand. I could not
say how far the lamp was from the point of the engine that I was
oiling, it was over two feet, it might have been closer, that is very
hard to say exactly the distance a hand would hold a lamp from the
engine. As to how long it was after I glanced backward before the
blow was struck I will say that it was just immediately, I looked
around and the blow was struck. In other words the act of glancing
backward and the receipt of the blow on the right side of my head
was about at the same instant, and as I saw the blow coming I
ducked my head like that and caught the blow right over the right
arm. I seen him as I looked over my shoulder and I ducked my head
just about the same time or just immediately afterwards. In other

words, at the time I heard the disturbance the blow was in motion and was in the act of falling upon my head but had not quite reached my head at that time, as I saw him. . . . At the time I saw the man who was making this blow he had already begun the stroke and I saw him just a moment before it hit. I saw the man who hit me and the blow was in motion. That is the answer I gave you a while ago. I am not a bit in the world mistaken about that. The best I remember the man had on a black hat. He had on a black hat, a medium size hat, as to whether it was a derby, a stiff hat or soft hat, I did not examine it and I could not say whether it was stiff, soft or what it was. It was not a straw hat.''

On the identification of the defendant this is, in the main, the evidence. There was no question of the fact that Stepp was assaulted by some one, and that his skull was fractured and he was rendered unconscious until perhaps in October; at least a considerable length of time. If this evidence is sufficient to identify appellant as the assaulting party the judgment should be affirmed, so far as that question is concerned. The witness is positive as to the identity of the defendant. The jury believed Stepp's testimony as to the identity of the appellant as the assaulting party. With this evidence in the record we would not feel justified in saying the jury was not authorized to disbelieve appellant's *alibi*. Appellant introduced evidence which if believed by the jury would have tended to show that he was at a different place. He claimed he was at the depot something like three quarters of a mile from the place of assault at such time as he could not have been at the round house and committed the assault. The time fixed is largely a matter of deduction drawn from circumstances and incidents upon which the witnesses base their conclusion. This was all before the jury. We are of opinion that as this case is presented we would not be justified in reversing on the question submitted and discussed.

The motion for rehearing will, therefore, be overruled.

*Overruled.*