## H. S. SMITH v. THE STATE.

No. 5952.  Decided April 6, 1921.

**1.—Bribery—Accomplice—Corroboration—Requested Charge—Intent.**

Where the alleged State's witness, to wit, the County Superintendent of public schools, according to the evidence not only encouraged the commission of the crime of bribery alleged in the indictment, but entered into a conspiracy to take part in its commission and was an actual participant therein, and there was no evidence that as a matter of law he was not an accomplice and had an innocent intent at the time, the court should have instructed the jury on the corroboration of accomplice testimony, as requested.

**2.—Same—Rule Stated—Feigned Accomplice—Criminal Intent.**

Where, the complicity of the witness is admitted, but the prosecution claims that he was merely a feigned accomplice, acting with a view to the detection of the real criminal, it is for the jury to determine whether the witness was an actual or only a feigned accomplice, and the element which distinguishes the feigned from the actual accomplice is the absence of a criminal intent.  Following Preston v. State, 41 Texas Crim. Rep., 300, and other cases.

Appeal from the District Court of Houston County.  Tried before the Honorable John S. Prince.

Appeal from a conviction of bribery; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Adams & Adams* and *Garrison, Pollard, Morris & Berry,* for appellant.—Cited Morawietz v. State, 46 Texas Crim. Rep., 440; Ruffin v. State, 36 id., 565; Collins v. State, 51 S. W. Rep., 216, and cases cited in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited Minter v. State, 70 Texas Crim. Rep., —; Moore v. State, 44 id., 159.

MORROW, PRESIDING JUDGE.—Conviction is for bribery; punishment fixed at confinement in the penitentiary for a period of four years.

89 Tex.—10

It was charged that appellant sought to bribe the County Superintendent of Public Schools to omit the performance of his official duty. (See Art. 174 of the Penal Code).

Certain negroes were applicants for teachers' certificates. The law made the County Superintendent their custodian and charged him with the duty of forwarding them to the State Superintendent of Education. (See Vernon's Civil Statutes, Articles 2786 and 2787). During the examination an agreement was made between the County Superintendent of Public Schools and the appellant and his co-conspirator Robinson to the effect that the examination papers would be delivered to appellant so that he might substitute others in their stead. There was difficulty in agreeing upon the procedure. The suggestion of the Superintendent as to the method of exchange was adopted, and pursuant thereto he took a bundle of papers to the home of a negro woman at night-time and received in exchange therefor certain money in an envelope which by pre-arrangement he had furnished. We quote from his testimony:

"I carried this bundle to the house and left them with Robinson (Robinson was a confederate of the appellant), and Robinson handed me this envelope which was lying on the floor when I called his attention to it. Before handing him the bundle I stepped to where I could use the light that was on the inside of the building to see what was in the envelope, and I found it to be money, and I handed him the package and left."

The sheriff arrived at the scene of action by a different route from that taken by the Superintendent. The sheriff saw the exchange of papers, went into the house, arrested the appellant, Robinson and another negro who was there. According to the sheriff, they were all working with papers; and the bundle which the Superintendent had furnished was hidden behind the bed.

Upon the trial appellant sought to have the jury so instructed that they might determine whether the County Superintendent was an accomplice or not, and informed touching the necessity of corroboration in the event he was an accomplice. (See Art. 801, Code of Crim. Procedure.) The rule of law, as stated in Corpus Juris, (Vol. 16, page 678, Sec. 1370) is as follows:

"Where the facts with respect to the participation of a witness in the crime for which defendant is on trial are clear and undisputed, it is for the court to determine whether or not he is an accomplice; but the question of accomplicity is one to be decided by the jury where, although there is evidence tending to connect the witness with the crime, the facts are disputed or susceptible of different inferences.

"Where the complicity of the witness is admitted, but the prosecution claims that he was merely a feigned accomplice acting with a view to the detection of the real criminals, it is for the jury to determine whether the witness was an actual or only a feigned accomplice."

Numerous decisions from this and other States are found in the notes. Among those supporting the general rule are: Preston v. State, 41 Texas Crim. Rep., 300; Williams v. State, 33 Texas Crim. Rep., 128; Spencer v. State, 52 Texas Crim. Rep., 289. Among those agreeing with the text touching a feigned accomplice are Guyer v. State, 37 Texas Crim. Rep., 489; Wright v. State, 7 Texas Crim. App., 574; People v. Bolanger, 71 Cal., 17; State v. McKean, 36 Iowa, 343; Saunders v. People, 38 Mich., 218. The cases last referred to and others illustrate the correctness of the rule. See Ruffin v. State, 36 Texas Crim. Rep., 566; Dever v. State, 37 Texas Crim. Rep., 396. The courts have had many occasions to deal with the subject of feigned accomplices. (See Ruling Case Law, Vol. 1, page 159.) The element which distinguishes them from real accomplices is the absence of criminal intent. Where the evidence is without conflict and susceptible of no inference, other than that of innocent intent, there is no issue of fact for the jury, but the witness, as a matter of law, is not an accomplice. The propriety of officers engaging in transactions of the character in question has been criticized. Holding in the case of Guyer v. State that reversible error was committed in failing to permit the jury to pass upon whether the sheriff, who testified as a witness, should require corroboration as an accomplice, the court said:

"We can conceive of no conduct more reprehensible on the part of officers, whose duty it is to prevent crime, and 'nip in the bud,' instead of so doing, to lend aid and encouragement in carrying it out. As was said by Marston, judge, in Saunders v. People, 38 Mich., 218: 'Where a person contemplating the commission of an offense approaches an officer of the law, and asks his assistance, it would seem to be the duty of the latter, according to the plainest principles of duty and justice, to decline to render such assistance, and to take such steps as would be likely to prevent the commission of the offense, and tend to the elevation and improvement of the would-be criminal, rather than to his further debasement. Some courts have gone a great way in giving encouragement to detectives in some very questionable methods adopted by them to discover the guilt of criminals, but they have not yet gone so far, and I trust never will, as to lend aid or encouragement to officers who may, under a mistaken sense of duty, encourage and assist parties to commit crime in order that they may arrest and have them punished for so doing.' In this case the sheriff, instead of laying a plan to have the crime carried out, should have taken steps to prevent it. Instead thereof, it appears, not only from the testimony of the defendant's witnesses, but from the testimony of Love and others, that he was an active participant in the entire transaction, and his own testimony scarcely relieves him from the taint that the crime was suggested by him."

In the case before us, the County Superintendent, according to his testimony, not only encouraged the commission of the crime, but entered into a conspiracy to take part in its commission and was an

actual participant. He agreed to deliver to Smith certain papers which it was his duty to retain in his possession and forward to the State Superintendent of Education. The plan of executing the agreement was devised by him. The transaction was consummated and he received the bribe money. The sheriff saw the exchange made. When the sheriff entered the house, he found the appellant and Robinson working with papers. What papers they were is not disclosed by the testimony; whether part of the papers received from the County Superintendent or other papers is not definitely disclosed. They are not described by the testimony of any of the witnesses. Apparently they were available to the State. What was the character of the hidden papers which the sheriff took to be those delivered by the officer is not revealed by the sheriff's testimony nor by the exhibition of the papers in the statement of facts. The State relies, to purge the case of any suspicion of wrong-doing by the County Superintendent and to refute any suggestion of criminal intent, on the declaration of the officer alone. He declared that he had no intent save to entrap the appellant and his confederate. To show that in executing the agreement so far as it was executed by him that the papers which he delivered were not those which he agreed to deliver, nor which would have been useful to the appellant, reliance is had alone upon his testimony, notwithstanding that obviously other testimony was available to the State.

So far as we have observed cases in which the courts have held that one who took part in the commission of the offense was, as a matter of law, not an accomplice witness, they are those cases in which his innocent intent was established by testimony other than his own; cases in which he has in advance made known to others that he planned to act with the real offenders in order to entrap them. Chitister v. State, 33 Texas Crim. Rep., 635; Sanchez v. State, 48 Texas Crim. Rep., 591; Wright v. State, 7 Texas Crim. Rep., 574; Johnson v. State, 3 Texas Crim. Rep., 590; Clay v. State, 40 Texas Crim. Rep., 560; Penn. v. State, 43 Texas Crim. Rep., 608; Minter v. State, 70 Texas Crim. Rep., 644.

In the case before us the record suggests that the sheriff had some advance knowledge of the conspiracy and the time and manner of its contemplated execution. It may be that his knowledge came from the conferences with the Superintendent of Public Schools. The record, however, is silent upon the subject. The sheriff was a witness for the State and did not disclose the source of his information. The acts and conduct of the participants were, before the jury, explained by the testimony of one of them. Assuming his explanation to be true, there was much other evidence available to the State by which its truth might have been supported. In the absence of this evidence and in view of the record and the decisions to which we have referred, we think the court was not warranted in refusing the request of the

appellant to instruct the jury upon the law governing accomplice testimony.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*