## FRED REED V. THE STATE.

No. 6830.   Decided October 18, 1922.

Rehearing granted November 29, 1922.

**Manufacture of Intoxicating Liquor—Accomplice—Fact for Jury.**

Where, upon trial of the illegal manufacture of intoxicating liquor, there was presented sufficient evidence before the trial court to call for the submission to the jury of the question as to whether a certain State witness was an accomplice, and the defendant requested the submission of such charge, which was refused, the same was reversible error under the facts of the instant case. Lattimore, Judge, dissenting.

Appeal from the District Court of Comanche.   Tried below before the Honorable J. R. McClellan.

Appeal from a conviction of the illegal manufacture of intoxicating liquor; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Callaway & Callaway*, for appellant.—Cited: Phillips v. State, 18 Texas Crim. App., 169; Ortis v. State, 18 id., 282; Hunnicutt v. State, 18 id., 521; Johnson v. State, 125 S. W. Rep., 16; Newton v. State, 138 id., 708; Chandler v. State, 230 id., 1000; Stiles v. State, 232 id., 805.

*R. G. Storey*, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Comanche County of the illegal manufacture of intoxicating liquor, and his punishment fixed at two years in the penitentiary.

But one question is presented which, in our opinion, calls for discussion. Was there sufficient evidence before the trial court to call for the submission to the jury of the question as to whether Mrs. Earl Henry was an accomplice witness? In various ways appellant presented to the court his desire to have this issue submitted, all of which were refused. The crime charged was the manufacture of whisky. The offense, if any, was committed at the house occupied by Mrs. Henry and her husband. The latter was engaged in the illegal enterprise and was an accomplice. Mrs. Henry was present in the house, and part of the time in the room where the liquor was being made. She was on friendly terms with the parties implicated. The stove used for cooking the mash belonged to the Henrys, and so did the tub in which the men brought water from a well in the Henrys' yard.

With the exception of the introduction of evidence as to his good reputation, no testimony was introduced for appellant. From the testimony of Mrs. Henry herself must it be determined whether the issue of accomplice *vel non* was raised as to her. That presence alone

would not make one an accomplice is ascertained from the statutes. Article 75 P. C. One present must have advised or agreed to the commission of the offense or else be acting with those actually committing the crime in order to make such person an accomplice, Article 78, P. C., or must have acted in some way with the persons committing such offense, Welsh v. State, 3 Texas Crim. App., 110, or must be shown to have had some criminal connection with the offense on trial, else a charge on accomplice testimony would not be required. Branch's Ann. P. C., Sec. 702.

We reproduce the salient points of Mrs. Henry's testimony: "I was at home in April, 1921, when whisky was made at my house. Fred Reed was there. . . My husband was there. . . They made it in a still and cooked it on the cook stove where my husband and I lived. I did not assist them in making it. I did not receive any part of it. They did the cooking in the nighttime. I wouldn't sit up and watch them until they got through." On cross-examination of this witness she further said: "The stove was ours. I didn't know they were going to do this till I saw Mr. Walker fixing it that night; Earl didn't tell me about it. I don't think Earl got anything out of it. It wasn't agreeable to me for them to use the stove and cook it there. . . I said nothing to them about it . . . I did not put wood in the stove . . . none of the whisky was left there . . . they didn't use our stove wood. Mr. Walker brought wood. I was in there a while with them . . . I didn't invite them to my house, nor did I tell them to leave . . . they used a tub. It was our tub, and they brought water from our well with it and poured it in a keg . . I didn't make Earl quit . . . I didn't tell him to get the stuff out of there . . . I guess Earl had charge of the house and the things in it." We have carefully considered this testimony in the light of the opinions of this court and find nothing in it which supports any reasonable belief that Mrs. Henry had any guilty connection with the making of this liquor. Her husband was present acting with the other parties. She was not asked to aid or assist, nor to advise or agree to what was done. That community property was used by the husband for the commission of the offense could give rise to no sort of charge against her in the absence of some evidence indicating more than a mere lack of resistance on her part, or failure to object. We find no evidence of any acting together as far as she was concerned. The case occupies a different attitude than it would if she had gone voluntarily with her husband or appellant to some place other than her home, where the crime was to be committed, in which case there might arise some inference of an acting together. Mrs. Henry, at the time this liquor was made, was at her home where her presence properly was, and she seems to have entirely refrained from any sort of participation in the acts of the men. The house was a small one, and it is true she did not run away but at-

tended to her baby and then went to bed. In our opinion the trial court did not err in refusing to submit the issue of accomplice testimony. The evidence supports the verdict. We are unable to perceive error in placing appellant on trial separately from the others charged in the same indictment with him.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

MORROW, Presiding Judge, (dissenting).—The writer is unable to concur in the affirmance of the judgment.

The State relied upon the testimony of Earl Henry and his wife. Henry testified that he and the appellant made whisky together at the home of Henry, and described in detail the manner in which it was done, and on cross-examination testified that it was done more than once, that his wife was present; that the kitchen stove was used in making the whisky; that she took no actual part in the making of it.

Mrs. Henry testified that appellant and her husband made whisky at her house twice; that they used a copper still and cooked the whisky on the cook stove, in the house in which she and her husband lived, which consisted of three rooms, two of which they were using; that she did not assist in making the whisky or received any part of it; that they cooked it in the night-time; that it was not agreeable with her but she never said anything to them about it. She got none of the whisky and her husband got none of it so far as she knew. The whisky was made at her house but was afterwards carried away. She made no protest, but was friendly with Reed and Walker, who also acted with them, and at times she was in the room talking to them while the operations were going on. She went back and forth at will; that she knew they were coming and what they were coming for; that they used a tub for bringing water and put a cooling iron in the keg; that they got water out of a well in the yard to the house occupied by herself and her husband. That she was there each time the whisky was made; that afterwards her husband and Walker made whisky under the same circumstances when the appellant was not present.

Earl Henry was under indictment for murder and also for the manufacture of intoxicating liquors. The court instructed the jury that he was an accomplice and that to convict the appellant corroboration of his testimony was required.

From the testimony of Earl Henry, a witness for the State, the evidence shows that he and Fred Reed and Otto West made whisky at the house of Henry, by using a copper pot and cooking the whisky on the cook stove. The mash was boiled with meal and sugar and let stand for five days, then boiled off. This was done at night. It was

done in the presence of the wife of Earl Henry. The family consisted of himself, his wife and one child, two years old. The kitchen stove was used. The house contained two rooms, and at times his wife was in the room. She did nothing but looked on. She owned an interest in the cook stove. The witness was interested in making the whisky. At one time he was paid in money, and as I understand the record, at other times he was paid in whisky. According to his testimony, they gave him so much money the first time for the use of his premises, but the last time they divided the whisky.

Mrs. Henry testified that the whisky was made in a copper still on the cook stove in the dwelling house in which she and her husband lived, which was a two room house; that the cooking was done at night; that she retired before they got there; that on three different occasions this occurred; that she expressed to them no objection as they were friends of hers; that she neither invited them to come nor told them to leave; that she knew what they were coming for; that they used a tub belonging to her and her husband to bring water from a well on the premises used by her and her husband; that she was there and saw them make the whisky each time that it was made and was in conversation with them occasionally during the process. Bearing in mind that within the meaning of the statute, requiring corroboration of accomplice witness, the term "accomplice" applies to all persons connected with the crime by any unlawful act or omission, transpiring either before, at the time of, or after the commission of the offense, and whether the witness was present or participated in the crime or not (Robert v. State, 88 Texas Crim. Rep., 488 Chandler v. State, 89 Texas Crim. Rep., 309; Chandler v. State, 231 S. W. Rep., 107), the question therefore arises: Was there evidence which brought Mrs. Henry within the scope of this definition? If there was such evidence, then the *status* of the witness became a question of fact, notwithstanding she, by her own testimony, gave evidence which, if true, would exculpate her from any criminal connection, affirmative or negative with the offense. Franklin v. State, 89 Texas Crim. Rep., 252, 230 S. W. Rep., 692; Chandler v. State, 230 S. W. Rep., 999; Hornbuckle v. State, 86 Texas Crim. Rep., 352.

There being evidence from which the jury might have drawn the inference that the witness was an accomplice, the court was not warranted in refusing to submit the issue to the jury, although there was other evidence from which the jury might have formed a contrary conclusion. Smith v. State, 89 Texas Crim. Rep., 145, 229 S. W. Rep., 523.

Appellant requested the court to instruct the jury in appropriate language to determine whether Mrs. Earl Henry was an accomplice, and if so that her evidence would not be sufficient corroboration. This the court refused to do, and in doing so, in the opinion of the writer,

committed error. McElroy v. State, 53 Texas Crim. Rep., 59; Branch's Ann. P. C., Sec. 702. Under our statute, there was no presumption that she was acting under the command of her husband (Article 36, of the Penal Code), and there was no evidence to that effect. Under the circumstances there was no impediment to her occupying the relation of principal or accomplice. Barker v. State, 64 Texas Crim. Rep., 106. She was present when the unlawful act was committed and knew in advance that it was about to be committed, and the evidence is such as authorized the jury to conclude that she consented to it. Her utensils were used in manufacturing the whisky; her house was used as a shield against detection, and the inference that she, knowing of the unlawful act, aided or encouraged its commission, is not unauthorized. It cannot be said, as a matter of law, that she was not a principal offender under some of the provisions of Title 3, Chapter 1 of the Penal Code. Her testimony was essential, for without it the accomplice Henry is not corroborated.

The refusal of the court to give the instruction mentioned is error prejudicial to the appellant and should result in a reversal of the judgment.

## ON REHEARING.

### November 29, 1922.

HAWKINS, JUDGE.—It is earnestly insisted that the majority opinion is wrong in holding that it was not error for the court to omit submission of the question of complicity of Mrs. Henry to the jury. The facts are very fully stated in the two opinions. There is one circumstance not mentioned in either which has some bearing on the matter. It appears from Mrs. Henry's evidence that after appellant's and Walker's connection with manufacturing whisky at Henry's house ceased, Henry and another party made whisky there also, and that her husband got half of the whisky for his part. We are not called upon to determine whether Mrs. Henry was in fact an accomplice but whether the facts and circumstances in evidence raise the issue. In determining that question it would be well to forget the relation of husband and wife, and thereby dismiss the possible presumption that Mrs. Henry may have been dominated by her husband, because that is an argument to be addressed to the jury whose duty it is to settle the very issue of fact which appellant contends should have been submitted.

If A. in connection with others, should engage in the manufacture of whisky in a house owned and occupied jointly by A and B, and for that purpose use property which also belonged to them jointly, such as the stove and cooking utensils, and B. should be present on one occasion, but denying advance knowledge of what was going to happen and also of any interest in the result thereof and no facts

showed any aid rendered by him, then it might be that the facts were insufficient from which a jury could determine that B had any complicity therein; but if it could be shown that repeated acts of manufacturing whisky in the house jointly owned by A and B were committed by different parties acting with A at all times using the property over which B had as much control as A and that B was at all times present, making no protest thereat, it could hardly be said with reason that although B. may have denied that he was in any way aiding or encouraging the commission of the offense or had any interest in the result thereof, that the facts and circumstances would not be of such a character that therefrom the jury might conclude that even in the face of B's denial he may have had some criminal connection therewith. The more offenses committed in B.'s presence, upon their joint premises and with their joint property, the greater would be the suspicion as to B's complicity therein. That seems to be the condition in the instant case. It is true Mrs. Henry denied that she had any part in the illegal interprise going on in the house occupied by her and her husband, or that she in any way encouraged or aided in it, and it may be that the jury would have accepted her version of the matter. On the other hand, the jury saw the witnesses, were in a better position to judge than are we whether she was likely to have been dominated by her husband in the transaction, and from all the facts and circumstances might have concluded, notwithstanding her denial, that she came within the rule of an accomplice witness. There is no legal proposition involved in the matter before us; it is simply a question to determine from the facts and circumstances whether the court should have left it to the jury to say whether she was an accomplice. The very fact that we ourselves have had trouble in agreeing upon the matter is rather persuasive that the question is not without difficulty, and has led us to believe that possibly we were wrong in holding that the court committed no error in withholding this issue from the jury.

So believing, the judgment of affirmance is set aside, the motion for rehearing is granted, the judgment of the trial court is reversed and the cause remanded. Judge Lattimore adheres to the views expressed in the original opinion that the evidence did not raise the issue; but no principle of law being involved he does not deem it necessary to write further.

*Reversed and remanded.*