JIM HODGES v. THE STATE.

No. 20530. Delivered November 1, 1939.

528

The opinion states the case.

*Newton P. Willis,* of Pampa, and *E. T. Miller,* of Amarillo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for receiving and concealing stolen property. The punishment assessed is confinement in the State penitentiary for a term of seven years.

The record shows that on the night of February 7, 1938, O. D. James and Ellis Bonham entered the offices of the Southern Exploration Company and took therefrom two Underwood Typewriters, one Burroughs Adding Machine and one Monroe Calculator, which they took to appellant's place of business early next morning and sold to him for $30. They told him where they had gotten the machines and he remarked that this

company would replace them with new ones, which he wanted them also to secure for him. Some three months later, these men again broke into the same office, got the new machines and sold them to appellant. Some of the property taken in the first burglary was subsequently recovered at the home of J. C. Searle, who had been employed by appellant as a bookkeeper at the time of the first transaction above recounted. This bookkeeper testified that he had seen the typewriter and adding machine in a closet at appellant's place of business during the time of his employment; that when illness forced him to resign, appellant had given them to him. These machines were positively identified as the property stolen in the first burglary. Appellant did not testify but offered some witness who testified that they had seen the machines in question in appellant's place of business long prior to February 8, 1938, the date of the first burglary. In our opinion the evidence is sufficient to sustain and justify the jury's conclusion of appellant's guilt.

By bills of exceptions numbers one (A) and one (B), appellant complains of the testimony of James and Bonham relative to the property taken in the second burglary of the Southern Exploration Company's offices, on the ground that he was only on trial for the initial burglary. That such testimony was not admissible to show motive, intent, system or knowledge. That at the time he acquired this property, he had no knowledge that it was acquired by James and Bonham by theft. The trial court has qualified these bills and states therein that the testimony was admitted for the purpose of showing guilty knowledge on the part of defendant, and tended to show an agreement and a conspiracy between the parties, as well as their criminal connection. That it involved the same persons and the same transaction. At the conclusion of the evidence, however, the court expressly withdrew the same from the consideration of the jury and instructed them not to consider said testimony. The court states that he overruled appellant's motion for a new trial based on the admission of said testimony because he believed its harmful effect, if any, was cured by its withdrawal.

While the testimony in question might have had some weight with the jury and the court's instruction might not have been sufficient to have entirely eradicated the same from their minds, yet it is our opinion that the same was admissible. The testimony relating to the second transaction became admissible (1) as tending to show that appellant was engaged in the business of receiving and concealing stolen

property with particular reference to an agreement he had entered into with James and Bonham, and (2) as a circumstance tending to show guilty knowledge that the property first acquired, and which is the subject of this prosecution was stolen. We quote from the testimony of one of these accomplices, Bonham:

"It was understood between us and Jim Hodges, before we broke in out here at the Southern Exploration Office, that he was to buy this stuff from us. * * Our negotiations were before we broke in the first time, and that agreement was outstanding until and after the second time we went back out there; he said that these old machines would be replaced by new ones, and that he wanted the new ones out of that same place. * * All of us entered into the agreement there together, before we broke into the office the first time. * *"

Wharton on Criminal Evidence, (Tenth Edition), Vol. 1, p. 135, Sec. 35, states the rule to be as follows: "Evidence of collateral offenses often becomes relevant where it is necessary to prove scienter, or guilty knowledge, even though the reception of such evidence might establish a different and independent offense.

"In prosecutions for receiving stolen goods, guilty knowledge is the gist or substance of the offense to be established by the prosecution; and evidence of collateral offenses is admissible to establish such knowledge."

The case of Mehlman v. State, 244 S. W., 523, 92 Tex. Crim. Rep., 455 has some bearing on the question. On a similar point this court said: "* * We think the testimony of other transactions similar in character and surroundings, whether occurring before or after that involved in the instant transaction, would serve a useful purpose in showing the attitude of appellant toward the transaction in question. On questions of intent or system, or a case depending on circumstantial evidence, as here involved, proof becomes admissible of other similar but disconnected transactions. Hennessey v. State, 23 Tex. Crim. 340."

See also the excellent annotation of cases on the subject in 105 A. L. R., 1291 et seq.

In the instant case there was direct and positive testimony that appellant knew the property was stolen when he received it. Subsequent transactions between these same parties of the same nature, in pursuance to a prearranged scheme and in-

volving the same character of property was certainly a corroborating circumstance. The fact that the second theft took place some three months after the first would not tend to indicate an extraneous offense so as not to allow its admission in evidence under the circumstances of this case.

Appellant relies upon the cases of Poon v. State, 120 Tex. Crim. Rep., 522, 48 S. W. (2d), 307, and Bismark v. State, 73 S. W., 965. We think these cases are distinguishable from the instant case upon the facts. In the Poon Case, the burglars burglarized Block's Store and stole some cigars, which were delivered to Poon at midnight. About a month later, the same burglars burglarized the Piggly Wiggly and Handy Andy Store and stole coffee, cigarettes, and hams, (articles of a different nature), which they sold and delivered to Poon about 2. A. M. It seems that the burglaries of these last mentioned stores were independent transactions, in no way connected with the first; evidently there was no agreement. In the instant case there was an agreement between James and Bonham, the accomplices, and the appellant to burglarize the office of the Southern Exploration Company and bring the machines to him, which they did. It seems that appellant was principally interested in the new machines which the company would install, and he agreed to buy them when they should succeed in entering the building of the company the second time and steal them. Here we have an agreement entered into by appellant with James and Bonham to buy the typewriters and adding machines, which they intended to steal. All of the goods are of a similar kind. Appellant's ultimate purpose seems to have been to get the new machines; consequently the old ones had to be stolen before the company would install new ones. The two acts are so connected by the facts above recited and the agreement which continued down to the time of the second burglary as to be tantamount to one continuous transaction. See Lytton v. State, 101 S. W. (2d) 564; Mehlman v. State, 92 Tex. Crim. Rep., 455. In the Bismark Case, the goods were not stolen from the same person, nor were they of the same character as those involved in the second transaction. Moreover there seems to have been no prearranged scheme or design. The case is clearly distinguishable from the instant one on the facts. Under the peculiar facts of this case, we think this testimony was admissible.

Appellant, in due time, objected to the court's charge in that it failed to submit to the jury the question of whether or not Searle was an accomplice witness and in declining to

submit appellant's special requested charge on the subject. There is testimony in the record from which the jury might reasonably have reached the conclusion that the witness, Searle, was an accomplice witness. He worked for appellant in the office where the stolen property was placed, but testified that he did not see it there, and did not know it was there until two days before he left to go to his home in Iowa Park, at which time appellant gave him a typewriter and calculating machine and told him that they were on the top shelf of a closet. That he got the machines out of the closet on the day he left for his home, placed them in cartons and put them in his automobile, where he covered them with blankets and carried them to his home, over 200 miles away. At his home, he stored them in a closet. It also appears from the record that when the officers came to his home looking for the machines he did not tell them that he had them until the officers had carried him to Wichita Falls and questioned him. There is also some testimony to the effect that the closet in appellant's place of business was too small to allow the insertion of the machines therein. If this be true then Searle's testimony that he took them out of said closet at appellant's place of business could not be true.

The term "accomplice" when applied to evidence, means a person who, either as principal, accomplice or accessory, is connected with the crime by an unlawful act or omission on his part, transpiring either before, at the time of, or after the commission of the offense. Under the facts recited, it is our opinion that the court erred in declining to submit to the jury the question of whether or not Searle was an accomplice witness. See Dooley v. State, 7 S. W. (2d), 96; Smith v. State, 18 S. W. (2d) 1070; Barker v. State, 175 S. W. 151; Reed v. State, 245 S. W., 432; McCormick v. State, 216 S. W. 871.

Appellant also complains of the court's action in declining to submit his special requested instruction relative to the law of circumstantial evidence. If the case had depended entirely on circumstantial evidence, then his position would have been well taken. But the State made a complete case against appellant by the testimony of James and Bonham, the accomplices, which was sufficiently corroborated by other facts and circumstances. Consequently a charge on the law of circumstantial evidence was not required.

All other matters complained of by appellant have been duly considered by us and are deemed to be without merit.

For the error discussed, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.